[Civ. No. 3323. Third Appellate District.—October 22, 1927.]

W. T. KINSEY, Respondent, v. JOHN M. BOYES, as Sheriff, et al., Defendants; FIDELITY AND DE-POSIT COMPANY OF MARYLAND (a Corporation), Appellant.

Bradford M. Melvin, Ward Sullivan, and Melvin, Mc-Clure & Sullivan, for Appellant.

E. J. Dole for Respondent.

HART, J.—This action is in claim and delivery, and is for the specific recovery of the possession of a certain Nash touring car, or in case possession thereof cannot be had, to recover the sum of $700, the alleged value thereof, together with the sum of $400 as damages for the alleged wrongful detention and use of said car. Judgment passed for the plaintiff in accord with the prayer of the complaint, as just indicated, and for the sum of $676 as damages for the unlawful detention and use of said car, the sum in excess of the sum specifically alleged in the complaint for such damage being for damage alleged to have been suffered by plaintiff for such detention and use by the defendants subsequent to the time of the filing of the complaint. The defendant Fidelity and Deposit Company made a motion for a new trial, which motion was denied.

The appeal is by the defendant corporation from said judgment upon a record prepared in pursuance of the provisions of section 953a of the Code of Civil Procedure.

This case has previously been before and decided by this court, the judgment having been reversed and the cause remanded for a new trial. (*Kinsey* v. *Ryan et al.*, 74 Cal. App. 567 [241 Pac. 282].) The opinion in that case, written by Justice Plummer, contains a full and clear statement of the facts and the issues presented and determined, and it will subserve the purposes of the present appeal to adopt herein such statement, which is as follows:

"On the twentieth day of January, 1923, the plaintiff and one J. H. Madison entered into a conditional contract of sale whereby the said J. H. Madison conditionally sold to the plaintiff a certain Nash automobile for the sum of $900, $360 payable in cash, and the remainder thereof as follows: $108 on February 15, 1923; $108 on March 15, 1923; $108 on April 15, 1923; $108 on May 15, 1923, and $108 on June 15, 1923. Possession of the automobile was then and there delivered to the plaintiff. The conditional contract of sale provided, first, that if the monthly payments were not made 'as provided therein, they should bear interest at the rate of one per cent per month until paid. It was also further conditioned that the purchaser should keep the property insured, and take other precautions for its safety, and keep it within the territorial limits of the state of Cali-

fornia. It was then provided that if the purchaser failed to make the payments as stipulated, the party of the first part might, at his option, retake possession of said automobile, including all new parts added thereto by the buyer and that the rights of the purchaser should thereupon terminate, and action might be begun for the collection of the remaining installments set forth in the contract and then remaining unpaid, or might waive the conditions of the contract, consider the sale absolute, and sue for the balance due, or take possession of the automobile, sell the same, apply the proceeds toward the payment of the balance due, and, in case of deficiency, proceed against the buyer for the amount due thereon, or that the seller might avail himself of any and all rights, privileges, or elections which are or may be granted to a seller by operation of law. On the twenty-third day of January, 1923, said J. H. Madison for the purpose, as shown by the testimony, of giving collateral security for general advances to be made to him by the Sonoma County National Bank assigned his interest in said contract to the Sonoma County National Bank by a written assignment in the following words:

" 'For value received J. H. Madison hereby transfers, assigns and sets over all *its* right, title and interest in and to the within contract and in and to the property therein described and to all of the moneys payable thereunder to Sonoma County National Bank, and hereby guarantees the payment of all moneys due or to become due under the said contract and also the full performance by the second party therein named of all the second party's promises and covenants and it hereby consents that the time of payment of any of the said installments therein provided may be extended at the request of the second party, notice of which is hereby waived.

" 'Dated, the 23 day of Jan. 1923.

" 'J. H. MADISON.'

"Thereafter and on the thirteenth day of April, 1923, in an action instituted by the Sterling Lumber Company against the said W. T. Kinsey wherein an attachment was levied, the defendant John M. Boyes, as sheriff of the county of Sonoma, levied upon the automobile herein mentioned. Thereupon and on the twentieth day of April, 1923, the seller mentioned in the conditional contract herein

referred to, filed his third-party claim as owner of said automobile in the following words and figures, to-wit:

" ' (Title of court and cause.)

" 'Notice of Claim Under Conditional Sale Contract.

" 'State of California, County of Sonoma,—ss.

" 'J. H. Madison, being first duly sworn, deposes and says:

" 'That he is the owner of that certain Nash automobile engine number 13856, State license number 121,680 taken under attachment issued in the above-entitled cause from the defendant W. T. Kinsey; that said W. T. Kinsey is in possession of said automobile under a conditional sale contract dated Petaluma, California, January 20, 1923, for the total sum or price of $900.00; that there is now due affiant from defendant the installment due on the 15th day of April, 1923, amounting to $108.00, together with interest from the date of the contract at the rate of eight per cent per annum; that there will accrue on the 15th day of May and the 15th day of June, 1923, respectively, installments of $108.00 together with like interest. That affiant hereby demands of the sheriff either the possession of said car or that said sheriff shall pay to affiant the above installments now due and to accrue in full in cash within five days from the receipt of this notice and affidavit.

" 'This notice and affidavit is given in accordance with Sections 689, 689a and 689b of the Code of Civil Procedure of the State of California and affiant hereby claims and demands all of the right accorded to him under said provisions of the law.

" 'J. H. MADISON.

" 'Subscribed and sworn to before me this 18th day of April, 1923.

" ' (Seal)                                        E. J. DOLE,

" 'Notary Public in and for the County of Sonoma, State of California.

" ' (Endorsed) Received in the sheriff's office of Sonoma Co., Cal., Apr. 20, 1923 at 35 min. past 9 o'clock A. M.'

"Following the filing of this claim a representative of the Sterling Lumber Company went with said Madison and the sheriff to the place of business of the Sonoma County National Bank, where the said representative of the Sterling Lumber Company paid to the Sonoma County National

Bank the unpaid portion on said contract, then amounting to the sum of $324, and received from said Sonoma County National Bank said contract with the following indorsements thereon:

" 'For value received, we hereby transfer, assign, and set over all our right, title and interest in and to the within contract and in and to the property therein described and to all of the moneys payable thereunder to the Sterling Lumber Company.

" 'THE SONOMA COUNTY NATIONAL BANK,
" 'By A. P. BEHRENS, Cashier.'

" (In pencil)

" 'W. T. Kinsey made the following payments:

| | |
|---|---|
| February 15, 23 | $108.00 |
| Mar. 15, 23 | 108.00 |
| Sterling Lumber Company paid the balance, April 23–23 | 324.00 |

$540.00'

"The sheriff then stored the automobile and retained possession thereof up to the time of the trial of this action.

"The Sterling Lumber Company was unsuccessful in its attachment suit, judgment being entered in favor of the said W. T. Kinsey, the defendant in that action and the plaintiff in this. After the rendition of judgment in favor of the defendant in the attachment suit, the plaintiff in this action, demand was made upon the sheriff for the return of the attached automobile. This demand not being complied with by the sheriff, this action was begun for its recovery, or for the value thereof. The complaint is in the usual form of claim and delivery for personal property. The defendants in this action admitting the attachment of the property, set up in their answer the conditional contract of sale, to which we have referred, and, among other things, alleged as follows:

" 'That on or about the 23rd day of January, 1923, said J. H. Madison assigned, transferred and set over said contract to the Sonoma County National Bank, a corporation.

" 'That after defendant sheriff had levied on said automobile, to-wit, on the 20th day of April, 1923, a third party claim was filed with defendant sheriff claiming title to said

automobile under and by virtue of said contract of conditional sale with J. H. Madison and Sonoma County National Bank; that thereupon, said Sterling Lumber Company, in pursuance of law, paid the amount unpaid under said conditional sale contract, and said contract of conditional sale was assigned and transferred by said Sonoma County National Bank to said Sterling Lumber Company; that said Sterling Lumber Company is now the owner and holder thereof.'

"It is further pleaded by defendants that the said W. T. Kinsey, the plaintiff herein, did not make the three payments provided to be made on the fifteenth day of April, fifteenth day of May and fifteenth day of June, respectively, and that the whole of said sums remained unpaid and that, pursuant to the terms of the contract of conditional sale, the Sterling Lumber Company had declared all rights of said W. T. Kinsey in and to said automobile to be at an end.

"There is no testimony in the record showing that such payments have not been made by the plaintiff, nor is there any testimony in the record showing that the Sterling Lumber Company has exercised any election whatever in the matter of the forfeiture of the plaintiff's ownership or right to the automobile in question, or has taken any proceedings whatever under and by virtue of the terms of the conditional sale contract herein referred to. It may be here stated that the conditional sale contract does not provide by any of its terms that upon failure of the buyer to make payments as therein provided, the buyer's rights in and to the automobile shall *ipso facto* terminate and thereafter be considered as ended. It provides simply, as we have hereinbefore stated, for certain remedies which the seller may take upon his election. The court, in its findings, found that the defendant sheriff is in possession of the automobile in question, that he had refused to deliver the same to the plaintiff, that his withholding thereof is not unlawful, and then the execution of the conditional contract of sale, as we have stated. The court also made the following findings:

"'That on or about the 23rd day of January, 1923, said J. H. Madison assigned, transferred and set over said contract to the Sonoma County National Bank, a corporation.

" 'That after defendant sheriff had levied on said automobile to-wit, on the 20th day of April, 1923, a third party claim was filed with defendant sheriff claiming title to said automobile under and by virtue of said contract of conditional sale· with J. H. Madison and Sonoma County National Bank; that thereupon, said Sterling Lumber Company paid the amount unpaid under said conditional sale contract, and said contract of conditional sale was assigned and transferred by said Sonoma County National Bank to said Sterling Lumber Company; that said Sterling Lumber Company is now the owner and holder thereof.' "

The grounds upon which the case was reversed on the former appeal were substantially these: 1. That, so far as the evidence disclosed, the title to the automobile, by virtue of the terms of the conditional sale contract, still remained in Madison, the seller, and that the assignment of the contract to the bank by Madison having been made merely as collateral security for general advances made and to be made by the bank to Madison, therefore the assignment of the contract by the bank to the Sterling Lumber Company had the effect of transferring, not the title to the automobile, but only such interest in the contract as the bank had under the assignment thereof to it by Madison; 2. That the record contained or disclosed no evidence showing that Kinsey, the purchaser, failed to make payments on the purchase price of the automobile, as required and prescribed by the contract; 3. That there was no evidence in the record showing or tending to show that the Sterling Lumber Company, assuming that it acquired ownership of the contract and all the rights of Madison thereunder, ever exercised its election, as authorized by the contract, to declare all the rights of the plaintiff in the automobile forfeited.

The findings made by the trial court in the trial of the action resulting in the present appeal are substantially the same as those made in the former trial of the action, as indicated in the above extract from Justice Plummer's opinion, save in a few particulars, one of which exceptions is that in the trial with which this appeal is concerned there is not, as there was at the former trial, any finding that the plaintiff had failed to make the installment payments on the purchase price of the automobile as required by the contract, and that thereupon the Sterling Lumber Company

as the successor in interest in the contract of Madison, had exercised its election to declare all the rights of the plaintiff in and to the automobile forfeited and terminated.

At the second trial of the action, the appealing defendant introduced testimony to the effect that Kinsey defaulted in the payment of the installments which had fallen due under the terms of the contract. Said defendant also introduced at the second trial testimony showing that the Sterling Lumber Company paid to the bank, to be paid by it to Madison, in response to his third-party claim, the installments on the purchase price of the automobile then remaining unpaid. Thus the appellant, at the retrial of the action —the trial of which this appeal is the culmination—supplied proof sufficient to uphold a finding that the plaintiff had not paid the installments as required by the contract, and also presented testimony sufficient to show that Madison in effect transferred to the bank all his interests or rights in the contract before the bank assigned it to the lumber company, or, at least, that his acceptance from the bank of payment of all that was due and to become due under the contract was sufficient, at least, as between him and the bank and its assignee, to estop him from claiming or asserting that the title to the automobile was still in him.

But, while this is all true, it does not follow that the judgment must be reversed. The attachment levied upon the automobile by the sheriff in the action by the lumber company was dissolved and became *functus officio* upon the entry of judgment in the attachment suit in favor of Kinsey, defendant in that suit, and against the lumber company, plaintiff therein. Upon the dissolution of said attachment, Kinsey was entitled to an immediate return by the sheriff of the automobile to his (Kinsey's) possession. As to this, we may properly at this point set forth what the record discloses. On April 13, 1923, the sheriff took possession of the automobile from Kinsey under the writ of attachment issued in the action by the lumber company against Kinsey previously filed. On October 22, 1923, judgment in favor of defendant was entered in the attachment suit. On January 21, 1924, Kinsey made a demand in writing on the sheriff for the release and return to him of the automobile. The sheriff refused to comply with the demand and still retained possession of the car. It will be ob-

served that, so far as this record discloses, the sheriff was without any authority to retain possession of the automobile between the time that the writ of attachment was dissolved upon the entry of judgment in the attachment suit in favor of Kinsey and the time at which the present action was commenced, which was on February 4, 1924, unless it may properly be held that a certain notification by the lumber company to the sheriff to retain in his possession the automobile under an alleged forfeiture by said company of the rights of Kinsey under the contract was of legal force. As to this notification, the testimony of the secretary of the lumber company is: That in the month of January, 1924—the particular day not stated—he called on the sheriff and orally notified him that the lumber company had declared the contract and all of Kinsey's interests thereunder forfeited, that he (the sheriff) should hold the car for it, and that it would "hold him (the sheriff) responsible for the car and the delivery of the possession of the same to it." The fact of such notification by the lumber company to the sheriff, after the discharge of the writ of attachment, which followed from the entry of judgment in favor of Kinsey in the attachment suit, implies that the company assumed, and thus indeed conceded, that the car, at the time of such notification, was in the rightful possession of the sheriff. So far as anything to the contrary appears, that assumption or concession was well founded as against the lumber company, but not as against Kinsey. It is further to be observed that from the time the present action was begun to the present time all parties apparently treated the possession of the car by the sheriff as being by virtue of this action, and that such possession was lawful. But, however that all may be, it is plainly manifest from the record that the alleged notification to the sheriff by the lumber company to hold the car was of no legal force. ▮ In other words, it is clear that the mere notification to the sheriff by the lumber company to hold the car for it did not amount to the exercise by the company of any of the several remedies prescribed by the contract, whereby, upon default by Kinsey in the payment of the installments on the purchase price as required by the contract, the seller or his assignee might take possession of the car or otherwise, as prescribed by the contract, have enforced payment of the moneys then

due. As stated in our opinion handed down on the former appeal, under the terms of the contract the mere failure on the part of the buyer to pay the installments as prescribed by said contract did not, *ipso facto,* operate to terminate the buyer's rights thereunder or his right to the possession of the automobile. The contract, as likewise stated, "simply provides for certain remedies which the seller may take upon his election." Therefore, to have effectively exercised its privilege under the contract to forfeit and so put at an end the rights of Kinsey thereunder because of the nonpayment of certain installments, it was necessary for the lumber company to have taken possession of the car, or if the sheriff refused to deliver possession, to have taken the necessary legal steps to recover the possession of the same from that officer. No such an attempt was made by the lumber company and its mere notice to the sheriff that he keep possession of the car for the company, or that it would hold him responsible therefor, amounted only to a mere unexecuted mental process or a mental gesture which, as in effect above suggested, possessed absolutely no legal force as in the exercise of the remedies available to the seller or his assignee (the lumber company) by virtue of the terms of the contract to secure possession of the car or payment of the delinquent installments. Indeed, it was tantamount only to a mere declaration by the lumber company to the sheriff—not to Kinsey—that it was the owner of the car. There is absolutely no testimony in this record showing that the lumber company proceeded in any other way or further than as above explained. Nor is there a particle of evidence tending to show that Kinsey knew anything about the purported notification by the lumber company to the sheriff to hold the car for it or that the company had declared that it claimed a right to its possession.

As we have heretofore stated, the court made no finding upon the question whether the lumber company had exercised its privilege as prescribed by the contract of taking possession of the car and declaring forfeited all of the rights of Kinsey thereunder. Since, however, there is no testimony in the record which would support such a finding, it was not necessary for the court to make one upon that subject. It follows that, upon the findings as made, to-

gether with the fact that there is no testimony that would support any finding as to the alleged forfeiture of the rights of Kinsey under the contract, the judgment must be sustained.

It should be stated that the discussion in the briefs on the present appeal of the proposition that, under section 689b of the Code of Civil Procedure, the Sterling Lumber Company became the absolute owner of the automobile upon its payment of all that was due from the buyer under the conditional contract is without pertinency to the disposition of the appeal now before us. The same proposition was urged by the Sterling Lumber Company on the former appeal and fully discussed in the briefs. As seen, in the case as it was formerly presented to this court, the only interest that the evidence showed that the bank had in the contract was that of collateral security for advances made and to be made to Madison, and, as shown above in the extract from the opinion delivered on the former appeal, it was, with obvious propriety, held that the assignment by the bank to the lumber company carried with it only such interest in the contract as the bank had, and that, therefore, the lumber company did not by said assignment acquire title to the automobile; hence section 689b of the Code of Civil Procedure had no application in that case. As has been shown, the Sterling Lumber Company lost its attachment suit against the plaintiff here, who was defendant in said suit, and, consequently, as stated, the sheriff lost his right to retain possession of the automobile, so far as was concerned the writ of attachment. But the discussion as to the effect of said section of the code on the situation presented here is academic rather than pertinent to the present consideration, for, as must be manifest, we have considered the case upon the assumption that the evidence in this record sufficiently shows that the Sterling Lumber Company became the absolute owner of the automobile by virtue of the assignment by the bank to it of the conditional sale contract and all the rights that the seller of the car had thereunder. What we hold here is that the lumber company, as to the contract, stands in the shoes of Madison, the seller; that Madison's remedial rights prior to the assignment, as is true of the lumber company as assignee of all of Madison's rights under the contract, are prescribed by the contract itself;

that, therefore, in order properly to exercise any of those rights for securing the payment of the unpaid installments, the company should have proceeded, at least substantially, as the contract provides, and that, as we hold, is not what it did in the present case.

For the reasons above stated the judgment is affirmed.

Finch, P. J., and Weyand, J., *pro tem.*, concurred.